held it essential that there be an *explicit* agreement to perform the work with due care or similar language. *See, Scrivenes v. Pepperidge Farms, Inc.*, Civ. No. 039946, 1997 WL 15410 *3-4 (Conn. Super. January 10, 1997) (contract language that work performed in "workmanlike manner or that the job be completed "to comply with industry standards" insufficient to impose independent duty to indemnify); *Johnston v. Connecticut Container Corp.*, Civ. No. 428890, 2001 WL 1231813 *3 (Conn. Super. Sept. 21, 2001) (contract language that "work would be completed in a professional manner according to standard practices insufficient" to impose independent duty to indemnify); *Rowan v. Briasco*, Civ. No. 088887, 2000 WL 157940 *3-4 (Conn. Super. Jan. 25, 2000) (an agreement to perform work in a workmanlike manner does not equate to an agreement to perform work with due care). (Unreported cases attached hereto as Ex. 1).

The policy behind these decisions is clear: If the exception referred to the quality of the work performed. *Ferryman* would only require an explicit expression in the contract of what is already implied in every contract in order to avoid the exclusivity provision. *Id.* In sum, the *Ferryman* exception applies only when the contract language imposes an obligation to perform the work under the contract in a safe manner (or the equivalent). *See e.g., Britt v. Danzinger Development.* Civ. No. 157399, 2000 WL 1862651 *2-3 (Conn. Super. Nov. 27, 2000) (contract

-19-

language that work be performed "in a reasonably safe manner" is sufficient).

The contract in this case provides only the assurance that Ducci will perform the contract

in a workmanlike manner:

> The Contractor further covenants and agrees that all of said work shall be done
> and performed in the best and most workmanlike manner and that all and every of
> said material and labor shall be in strict and entire conformity, in every respect,
> with said specifications and plans and shall be subject to inspection and approval
> of the Commissioner or his duly authorized representative, and, in case any of
> said material or labor shall be rejected by said Commissioner or his
> representative, as defective or unsuitable, then the said materials shall be removed
> and replaced with other approved materials and the said labor shall be done anew
> to the satisfaction and approval of the said Commissioner or his representative, at
> the cost and expense of the Contractor.

(Ex. B. Contract between Ducci and CDOT, dated March 31, 1997 at 3).

In short, the contractual assurances recited in the contract do not meet the standard for the

*Ferryman* exception. To the contrary, the provision quoted above is precisely the sort that the

*Scrivens* court found did not trigger the *Ferryman* exception.

As the necessary predicate to the exception for a contractor's obligation to perform work

with due care is not satisfied by the explicit terms of the contract at issue, the *Ferryman*

exception to the exclusive remedy bar of Connecticut's Workers Compensation Act, General

Statutes § 31-284 (a) *et seq.*, does not apply.[13] Accordingly, Metro-North's fourth cause of

action is barred by § 31-284 (a) *et seq.*, of the General Statutes, and Ducci is entitled to judgment

as a matter of law on that count.

C.      **Metro-North's Claim for Contribution is Barred by the Exclusivity
        Provisions of Connecticut's Workers Compensation Act**

In its fifth cause of action, Metro North alleges: "Should judgment be recovered against

Defendants/Third-Party Plaintiffs, then Defendants/Third-Party Plaintiff will be entitled to

contribution from Third-Party Defendant, Ducci, for all or any part of the amount of the

judgment on the basis of apportionment of responsibility as shall be ultimately determine[sic] at

the trial of this action, including reasonable costs and attorneys' fees." Complaint, ¶ 44.

Contribution is a tort remedy. Therefore, any claim seeking contribution must

---

[13]     Even if the exception did apply, however, Metro-North cannot establish that
Ducci acted in a negligent manner. In its interrogatories, dated December 17, 2002, Ducci
requested that Metro-North state "the precise act of negligence claimed" and "the facts
supporting each claim of negligence." (*See,* Ex. O, Metro-North's Responses to Ducci's Second
Set of Interrogatories, Interrogatory No. 2) Although Metro-North did provide a recitation of
claims of negligence, it has provided no factual basis and supplied no evidence to support these
claims, contrary to Ducci's requests. *Id.* (*See,* Ex. O, Metro-North's Responses to Ducci's
Second Set of Interrogatories, Interrogatory No. 2) On the other hand, the Occupational Health
and Safety Administration ("OSHA") conducted an investigation into the circumstances of
Gargano's injuries and found no OSHA violations on the part of Ducci or its employees. (Ex. N,
OSHA Inspection Report at 3)

-21-