UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------------ X
MICHAEL GARGANO and ANDREA GARGANO,

    Plaintiffs

- against -

METRO-NORTH COMMUTER RAILROAD COMPANY,

    Defendant/Third-Party Plaintiff,

- against -

DUCCI ELECTRICAL CONTRACTORS, INC.,

    Third-Party Defendant.
------------------------------------------------------------------------ X

Civil Action No.
3:00 CV 1477 (EBB)

October 12, 2004

## METRO-NORTH'S LOCAL RULE 56 (a) (2) STATEMENT

Defendant/Third Party Plaintiff Metro-North Commuter Railroad Company ("Metro-North") hereby responds to Third Party Defendant Ducci Electrical Contractors, Inc.'s ("Ducci") Local Rule 56 (a) (1) Statement:

    1.    Admit.

    2.    Deny.

    3.    Admit.

    4.    Deny.

    5.    Admit.

6. Admit.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Admit.

13. Admit.

14. Admit.

15. Deny.

16. Admit.

17. Admit.

18. Deny.

19. Deny.

20. Deny.

21. Deny and refer to the report for the contents thereof.

22. Deny.

## STATEMENT OF DISPUTED FACTS

1. Metro-North's involvement in the Project included providing Class A protection

to contractors, design approval and performance testing as the contractor completed various stages of the Project. (See Exhibit 6, Gillies Deposition, dated January 30, 2003, at pp. 84-85).

2. Also, the Metro-North Power Department provided the training and the qualification program for Ducci employees. Metro-North provided Class A protection to non-qualified Ducci employees, or those who were not certified journeymen linemen and who had not completed a Power class and received a blue sticker.[1] (See Ex. 6, pp. 86, 89).

3. This protection was provided at Ducci's request to those non-qualified employees who needed to work closer than 10 feet to energized line. Traditionally, Metro-North provided Class A protection to all contractors and non-qualified employees requiring them to stay 10 feet away from energized wires while working on Metro-North property. (See Ex. 6, p. 90).

4. However, as testified to by Metro-North Director of Power, Metro-North recognized that within the construction and utility industry there are qualified "journeymen linemen." Therefore, Metro-North made an agreement with Ducci to implement a training program that would allow these qualified contractors to work under the same 3 foot rule that applies to Class A Linemen. (See Ex. 6, pp. 91 - 93).

5. Under this policy, a Class A Lineman would obtain the clearance at Ducci's request and explain the clearance limits but would not be responsible to monitor the activities of the qualified contractors. Ducci was supposed to develop an internal clearance procedure

---

[1] A Blue Sticker worn on the contractor's helmet signifies to Metro-North field personnel that contractor's status as a certified journeyman lineman.

whereby they would police their own employees to ensure that they understand the clearance limits and the release of power back to Metro-North. (See Ex. 6, pp. 94-95).

6. In accordance with its agreement with Metro-North Ducci developed its own "Site Grounding Procedure" and Grounding Notification/Clearance Form. (See Ex. L and Ex. 10).

7. Pursuant to an agreement with Ducci, which modified Metro-North's MN-290, Metro-North recognized certified journeymen linemen as qualified contractors to work under the modified 3 foot clearance rule. (See Ex. 3 , Chestone Letter and Ex. 4, DiStasio Letter).

8. On July 22, 1999, plaintiff, Michael Gargano, was **not** a certified journeyman lineman and therefore **not** a qualified contractor permitted to work under the 3 foot clearance rule. (See Ex. 4, DiStasio Letter).

9. Notwithstanding that Mr. Gargano was not a certified journeyman lineman, he was nevertheless wearing a blue sticker on his helmet indicating to Metro-North field personnel that he was a qualified contractor. (See Ducci Ex. M, p. 85)

10. At 9:26 a.m. Ducci Foreman Phil Morse received an electrical clearance from Metro-North to conduct work on Track 2. (See Ex. 8).

11. At 12:21 p.m. Ducci Foreman Phil Morse received an electrical clearance from Metro-North to conduct work on Track 1. (See Ex. 9).

12. At sometime before 3:30 p.m. Ducci Foreman Phil Morse was advised by Metro-North Class A Lineman Robert Prentice that Tracks 1 and 2 were to be energized. (See Ex. 7, p.

102).

13.     Plaintiff testified that he was personally advised by Morse sometime between 3:00 and 3:30 p.m that Tracks 1 and 2 were going to be re-energized and that he needed to "clear up." (See Ex. A, p. 107)

14      Plaintiff testified that he was never asked to sign Ducci's Grounding Notification/Clearance Form by Mr. Morse regarding the electrical clearances on Tracks 1 and 2. (See Ex. A, pp. 99-100).

15.     In direct contradiction to Ducci's agreement with Metro-North, Mr. Morse testified that he did not require Ducci contractors to sign the Ducci Grounding Notification/Clearance Form. (See Ex. 7, pp. 67-68).

16.     Plaintiff testified that he advised Morse that he was going to go back up and work on the 42 crossover. Morse allegedly said "okay" and left the area. (See Ex. A, p.120-121).

17.     At 3:31 p.m. Morse signed off on Metro-North's MP-260 form acknowledging that he understood that Tracks 1 and 2 were to be energized and confirming that all Ducci contractors were clear. (See Exhibits 8 and 9).

18.     Whereas Ducci admits that it was required to purchase insurance with limits of *not less than $25 million per occurrence* (emphasis added) according to the amended Special Provision for Article 1.03.07 in the Contract between Ducci and CDOT, dated March 31, 1997 (See Ducci's Local Rule 56 (a) (1) Statement at ¶ 10) it fails to note the following additional

amended provision of Article 1.03.07 which deems a failure to purchase such insurance as a breach of the contract:

> The insurance, hereinbefore specified, shall be carried until all work required to be performed under the terms of the contract is satisfactorily completed and formally accepted. Failure to carry or keep such insurance in force until all work is satisfactorily completed shall constitute a violation of the contract.

(Ducci's Ex. F., p. 33).

19.     Further, Ducci misstates its actual insurance procurement claiming that it "procured a general liability policy providing $25 million in coverage...in compliance with the terms of the contract" when in fact it *only* purchased a $1 million general liability policy with varying layers of umbrella or excess insurance in the aggregate sum of $25 million in direct violation of the terms of the contract. (See Ducci's Local Rule 56 (a) (1) Statement at ¶ 15 and Ducci Exhibits E and I).

Wherefore, Metro-North respectfully requests that the Court deny Ducci's Motion for Summary Judgment.

DEFENDANT/THIRD PARTY
PLAINTIFF, METRO-NORTH
COMMUTER RAILROAD COMPANY

BY: _____
Sean M. Kane (CT 24832)
Landman Corsi Ballaine & Ford, PC
120 Broadway, 27th Floor
New York, NY 10271-0079
(212) 238-4800

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, on the 12th day of October, 2004, to all counsel and pro se parties of record as follows:

David J. Crotta, Jr., Esq.
Mulvey, Oliver, Gould & Crotta
83 Trumbull Street
New Haven, CT 06511

Eric P. Smith, Esq.
Steven J. Errante, Esq.
Lynch, Traub, Keefe & Errante
52 Trumbull Street
P.O. Box 1612
New Haven, CT 06506

David D. Chapman, Esq.
Genovese, Vehslage & LaRose
500 Enterprise Drive
Rocky Hill, CT 06067-4053

Julie A. Harris, Esq.
Law Offices of George J. DuBorg
200 Glastonbury Blvd., Suite 301
Glastonbury, CT 06033

Joseph A. Labella, Esq.
D'Attelo & Shields
500 Enterprise Drive, Suite 4B
Rocky Hill, CT 06067

Sean M. Kane (CT 24832)

379928.1 DocsNY